ARTHUR BUSTER RAYFIELD, ADMINISTRATOR OF THE ESTATE OF MACK L. RAYFIELD, DECEASED v. LAURA EDNA CLARK AND MRS. ANNIE ETHEL CLARK

No. 82

(Filed 9 May 1973)

1. **Automobiles § 62— striking pedestrian — sufficiency of evidence for jury — credibility of witness**

In this wrongful death action growing out of a pedestrian-automobile collision, the trial court properly denied defendants' motion

Rayfield v. Clark

for a directed verdict at the close of all the evidence where the jury could have found from the evidence that defendant driver, without keeping a proper lookout, and traveling at a greater speed than was reasonable and prudent after she had seen on the east shoulder a group of pedestrians who appeared to her to be about to cross the highway, drove off the pavement and collided with decedent on the west shoulder, notwithstanding there was evidence that the only witness for plaintiff who purported to have seen the collision was intoxicated and extraordinary acuteness and range of vision would have been required to see what he said he saw, and notwithstanding the absence of any testimony from the other three persons who were on the highway with decedent at the time of the accident, since the jurors are the sole judges of the credibility of a witness.

2. **Rules of Civil Procedure § 50— motion to set aside verdict — credibility of witness — duty of trial judge**

In passing upon a motion to set aside a verdict as being against the greater weight of the evidence, the trial judge is not required to take the testimony of any witness at face value; at any time he is convinced that the jury has been misled by unreliable testimony into returning an erroneous verdict his is the responsibility for awarding a new trial for that reason.

3. **Appeal and Error § 24; Trial § 50— failure to move for mistrial — contention not considered on appeal**

Contention that the trial judge erred in failing to declare a mistrial when the jury submitted a written question to the judge relating to insurance will not be considered on appeal where defendants did not move for a mistrial in the trial court.

APPEAL by defendants from *Anglin, J.,* 16 October 1972 Civil Session of AVERY, transferred for initial appellate review by the Supreme Court in consequence of its order dated 26 March 1973 entered pursuant to G.S. 7A-31(b)(4).

Action for wrongful death growing out of a pedestrian-automobile collision.

The accident, which resulted in the death of plaintiff's intestate (Rayfield) on 2 July 1971, occurred about 9:30 p.m. on 30 June 1971 at a point approximately one-fourth of a mile south of Newland on State Highway No. 194. The two-lane highway runs generally north and south. The hard-surfaced portion is approximately twenty-one feet in width; the shoulders on each side, three feet.

At the time of his death Rayfield was 47 years old and unmarried. His occupation was digging and loading shrubbery; his earnings, not over $18.00 a day and expenses. He was struck by a 1968 Volkswagen, owned by defendant Annie Ethel

Clark as a family-purpose car, and driven by her daughter, Laura Edna Clark, aged 18. On the night of 30 June 1971 the road was dry. Deputy Sheriff Thomas, testifying as a witness for plaintiff, said that the night was clear and "you could see"; that "it is a straight stretch of road for a half mile" and, "going south," you could see over a quarter of a mile straight to the scene; and that "there was no curve to the left."

The only witness for plaintiff who purported to have seen the collision was Earl Franklin. His testimony tended to show: Just before the accident Franklin and Rayfield had been at the Bruce Banner home on the east side of No. 194. Banner and Frank Buchanan left the house to push Banner's car out of a ditch down the road on the west side, and shortly thereafter Franklin and Rayfield followed. Rayfield was wearing a dark blue shirt. As they walked south on the east shoulder of the road, at a point about 50 yards south of a curve to the left for southbound traffic, Rayfield "angled across the road" to the west shoulder. Franklin remained on the east shoulder with Banner and Buchanan, and he saw Rayfield cross the road and walk south about 10 steps along the west shoulder. Franklin then started to cross the highway but, seeing the lights of a vehicle in the curve, he stopped and watched the car from the curve until it hit Rayfield.

The vehicle which Franklin saw was the Volkswagen driven by Miss Clark. In Franklin's opinion, it was going 55-60 MPH. As it came down the highway the automobile remained on the hard-surface until it was alongside Rayfield. Then "it made a little bobble—kind of a twist . . . like it hit right off the pavement and back on, just that fast. . . . [I]t was off and back on the hardtop." Franklin saw Rayfield fly up in the air. He said, "I saw Mack's body shoot over and right straight toward the front of the car on the righthand side. The front of the car hit him. I seen him go up in the air and straight out toward the gravel. I saw this over the car. I saw the car hit him. The car was between me and Mack at the time being." The Volkswagen then went about 170 feet and pulled off on the side of the road. The car in the ditch was beyond where the Volkswagen stopped.

Franklin was the first person to reach Rayfield after the accident. He found him lying in the center of the shoulder, his body parallel to the pavement. Franklin talked with Miss Clark seconds after the accident. She asked him what she had

Rayfield v. Clark

done, and he told her she might have killed a man. In reply to that she said, "I was looking at you fellows on the left side of the road. I did not see nobody on the right side of the road."

Later Franklin saw the investigating officer, Highway Patrolman L. R. Barnes, at the home of Bruce Banner, but he did not tell him he had witnessed the accident.

Defendants' evidence tended to show:

About 9:00 p.m. on 30 June 1971 Miss Clark, accompanied by her 18-year-old friend, Linda Lou Arnold, was driving a 1968 Volkswagen at 30-40 MPH on Highway 194 just south of Newland. The two girls were en route to Spruce Pine. When she was about 50 feet away from them, Miss Clark observed to the left of the road a group of pedestrians who looked as if they were about to cross the highway. These persons were Sam Banner, Bruce Banner, Earl Franklin, and Ella Buchanan. Just after she had passed them she felt a bump. At that time she was in the west lane of the highway, almost at the center line and at least two feet from the shoulder. Her car was never on the shoulder of the road. After she felt the bump she traveled about 100 feet and stopped near the place were Bruce Banner's Mustang was backed off in the ditch. She walked back to the spot where Rayfield was lying on the shoulder. He was trying to get up and was "almost on the highway."

Neither Miss Clark nor her companion ever saw Rayfield before she stopped the car. Miss Clark testified that if he had been in the highway she would have seen him. Only the right front fender and right headlight of the Volkswagen was damaged. Miss Clark's father came to the scene and talked to Sam Banner, Bruce Banner, Ella Buchanan, and Earl Franklin. In his opinion Earl Franklin was under the influence of alcohol.

When Police Officer Cook arrived at the scene about 9:35 p.m. he found Rayfield lying partly on and partly off the pavement. His head and shoulders "were on the hardtop." As soon as Cook arrived Earl Franklin "started cussing—just hollering." He was intoxicated, upset, and "using his mouth." The officer made him leave the scene and go to the house across the road.

Trooper Barnes arrived just as the ambulance left the scene with Rayfield. He found a red, 1968 Volkswagen in the southbound lane approximately 120 feet from what appeared to be

the point of impact. There was dry debris in the center of the southbound lane 120 feet north of the Volkswagen.

At the conclusion of all the evidence the court overruled defendants' motion for a directed verdict and submitted the case to the jury on issues of negligence, contributory negligence, and damages. The jury answered the issues of negligence and contributory negligence in favor of plaintiff and awarded damages in the sum of $15,000.00. From judgment in accordance with the verdict defendants appealed.

*Byrd, Byrd, Ervin & Blanton for plaintiff appellee.*

*Clarence N. Gilbert for defendant appellants.*

SHARP, Justice.

Defendants assign as error the court's refusal (1) to grant their motion for a directed verdict at the close of all the evidence and (2) to set aside the jury's verdict and enter judgment in accordance with their motion for a directed verdict. G.S. 1A-1, Rule 50(a), (b)(1) (1969). These motions raise the question whether the evidence, considered in the light most favorable to the plaintiff, will justify a verdict in his favor. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

[1] Thus viewed, the jury could have found from the evidence that Miss Clark, without keeping a proper lookout, and traveling at a greater speed than was reasonable and prudent after she had seen on the east shoulder a group of pedestrians who appeared to her to be about to cross the highway, drove off the pavement and collided with Rayfield on the west shoulder. From the evidence the jury could also have found that Miss Clark, driving at a reasonable rate of speed entirely in the lane for southbound traffic, collided with Rayfield when he suddenly stepped from the west shoulder onto the pavement and directly into the path of her oncoming car, which he should have seen approaching had he exercised proper care for his own safety.

The jury accepted Franklin's version of events and found for plaintiff. Defendants contend, however, that Franklin's testimony is inherently incredible and disproved by the physical evidence at the scene. Concededly, the absence of any testimony from the other three persons who were on the highway with Franklin at the time of the accident raises unanswered ques-

Rayfield v. Clark

tions. In addition the evidence of Franklin's intoxication, plus the extraordinary acuteness and range of vision which would have been required to see what he said he saw, cast some doubt on the accuracy of his observations. Yet the jurors are the sole judges of the credibility of a witness, and the weight to be given Franklin's testimony was a matter for them. The jury may believe all of the testimony of a witness, or part of it, or none of it. *Brown v. Brown,* 264 N.C. 485, 488, 141 S.E. 2d 875, 877 (1965). In passing upon a motion for a directed verdict and the subsequent motion for a judgment notwithstanding the verdict based upon it, we must accept the testimony of plaintiff's witnesses at face value. *Cockman v. Powers,* 248 N.C. 403, 407, 103 S.E. 2d 710, 713 (1958). We hold therefore that plaintiff's evidence was sufficient to survive the motion for a directed verdict.

[2] Defendants' next assignment is that the court erred in not allowing their motion to set aside the verdict as being against the greater weight of the evidence. This motion, of course, was addressed to the sound, judicial discretion of the trial judge, and his refusal to grant the motion is not appealable in the absence of manifest abuse of discretion. *Williams v. Boulerice,* 269 N.C. 499, 153 S.E. 2d 95 (1967). The reason for this rule is that the trial judge sees the witness and hears his testimony; the appellate court merely reads it. In passing upon a motion to set aside a verdict as being against the greater weight of the evidence, the trial judge is not required to take the testimony of any witness at face value. At any time he is convinced that the jury has been misled by unreliable testimony into returning an erroneous verdict his is the responsibility for awarding a new trial for that reason. Judge Anglin denied the motion to set aside the verdict and abuse of discretion has not been shown. This assignment of error is overruled.

[3] Defendants' final contention is that the court erred in failing to declare a mistrial when, while deliberating upon its verdict, the jury returned into the court and handed the following written question to the judge: "We, the jury, would like to know if the car was insured, and if there has been any money paid on said expenses incurred by the deceased by any insurance company?"

After instructing the jury that the matters involved in their question were of no concern whatever to them and that they would not consider those matters in any respect in arriving

at their verdict, the judge directed them to retire and resume their deliberations. Neither at that time, nor at any other, did defendants move for a mistrial, and this contention was first made on appeal. An assignment of error must be based on an exception timely noted, and exceptions which appear nowhere in the record except under the purported assignment of error will not be considered. *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223 (1955); Strong, 1 N. C. Index 2d *Appeal and Error* § 24 (1967).

In the trial below we find no reversible error.

No error.